Howard THOMPSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 25, 1957.

R. B. Harrington, Paintsville, for appellant.

Jo M. Ferguson, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Judge.

Howard Thompson, Harold Thompson and Dallas Hitchcock were jointly indicted for storehouse breaking in violation of KRS 433.190. At the conclusion of the Commonwealth's evidence, the indictment as to Harold Thompson was dismissed on motion of the Commonwealth, and the jury was directed by the lower court to find Dallas Hitchcock not guilty. The trial then proceeded as to Howard Thompson who was convicted and sentenced to the penitentiary for one year. He appeals.

Two grounds are urged for reversal: (1) That the evidence was insufficient to establish Howard Thompson's guilt; and (2) that certain testimony elicited from his witness, Dallas Hitchcock, on cross-examination was prejudicial.

Briefly stated, the facts are these: On the night of October 25, 1952, between the hours of 9:00 and 10:00 p. m., the commissary of the Pond Creek Pocahontas Company at Evanston in Breathitt County was

broken into and a green-painted safe containing $95 in cash, several cartons of cigarettes, a number of flashlights and other merchandise were stolen. Between these same hours that night a light-green 1951-model Hudson sedan was seen parked near the commissary. The safe was found later at Volga in Johnson County, about fifty miles from Evanston and approximately a mile and a half from appellant's residence. His home was searched and no property taken from the commissary was brought to light, but a green-painted 1951-model Hudson sedan, owned by appellant's father, was found on the latter's premises. On the rear bumper of this automobile green paint marks were smeared and on the floor mat in the trunk compartment of the car flakes of paint of a similar color were discovered. Samples of paint were taken from the bumper and also collected from the floor mat. These, together with scrapings removed from the outer coating of the safe, were sent to the Federal Bureau of Investigation for analysis. At the trial an agent of the Bureau testified the paint specimens obtained from the car were identical with the samples taken from the safe in chemical composition, number of layers and color.

Appellant testified he drove to Paintsville in his father's car on the evening of the break-in for the purpose of picking up his wife who was employed there at the Hotel Herald dining room. He claimed he arrived at his destination around 7:00 or 7:30 that night. However, according to her testimony, he did not call for her that night, although she expected him to do so between 7:00 or 7:30 p. m., which was her quitting time, so she did not wait for him but caught a ride home with another person. Appellant further testified he loafed around Paintsville until 11:00 p. m. and then returned to his home in Volga by 11:15 p. m., where he remained the rest of the night. His time of arrival home was corroborated by his wife, his father and his mother, all of whom lived with him, but no witness testified as to

his whereabouts before 11:00 p. m., except Charles Picklesimer, an assistant forest warden, who appeared in behalf of the Commonwealth. This witness stated he saw appellant between 9:00 and 10:00 p. m. in Volga. J. E. Combs, a detective for the Commonwealth who investigated the case, testified on rebuttal that appellant told him that he was in Ironton, Ohio, the night of the robbery and that he did not return home until early the next day. This officer added that appellant's wife gave him a similar statement as to appellant's movements at that time. Both appellant and his wife denied they had ever made such admissions to Combs.

Dallas Hitchcock who, as has been shown, was jointly indicted with appellant for the crime in question was called as a witness for the latter. His testimony on direct examination was mainly to the effect that he was not with the Thompsons on the night the commissary was broken into but, on the contrary, was with Charles Picklesimer fighting a forest fire. He stated he knew appellant "when he saw him, but that was all." But when cross-examined at length he remarked he "thought he had borrowed a flashlight from one of the Thompson boys, he didn't remember which one, one night," and it was brought out that it was similar to one of those the store manager had testified was stolen from the commissary.

In the light of the proof recited. we believe there was sufficient evidence to take the case to the jury and to sustain the verdict rendered. The automobile from which the paint samples were removed that matched the paint scrapings taken from the safe was concededly in appellant's possession on the occasion of the robbery. Furthermore, a car identical in appearance with the one appellant was driving was seen at the commissary during the time the crime was supposed to have been committed. It is our view that this evidence alone would uphold the conviction. Appellant attempted to establish that he was

elsewhere than at the scene of the crime when the robbery was perpetrated, but his testimony as to his whereabouts and his movements on the occasion is replete with contradictions and inconsistencies. Even the credibility of those who said he was at home around 11:15 that night was placed in doubt. We conclude the evidence, though circumstantial, points directly and unerringly to the guilt of appellant.

 The next complaint concerns certain statements of appellant's witness, Dallas Hitchcock. As heretofore pointed out, this witness on cross-examination stated he had one night borrowed a flashlight from one of the Thompsons (he did not recall which one) and it was a flashlight similar in appearance to one the store manager testified had been stolen from the commissary. Hitchcock further testified that when "they" (evidently the peace officers) arrested him they found a carton of cigarettes in his possession. Although these cigarettes were of the same brand as some of those that had been pilfered from the commissary, he explained he had bought them from a coal miner at a reduced price. He claimed it was not unusual for coal miners to peddle cigarettes on the streets, since they could purchase them cheaply at the commissary and could sell them cheaply.

This line of testimony was objected to on the theory that it was never shown that the flashlight and the cigarettes had ever been under the control of appellant. We do not believe it can be questioned but that the first statement tended to connect appellant with possession of the flashlight, even though Hitchcock's testimony does not make it clear which of the Thompsons loaned it to him. It could easily be inferred from this proof that appellant alone or he and his brother together had possession of it. For these reasons, it is our view that this evidence was competent. We might add that it was not necessary that the flashlight should have been identified positively as one of those stolen; it was sufficient, as was done, to establish that it was similar to the property stolen. See Eagle v. Commonwealth, 223 Ky. 178, 3 S.W.2d 212. As to the testimony introduced relative to the cigarettes which were discovered on Hitchcock's person, we have some doubts as to its admissibility, but we hasten to say that we certainly do not believe this particular shred of proof had a prejudicial effect on the outcome of the case, because it seems to us the evidence, taken as a whole, preponderates on the side of appellant's guilt.

Wherefore, the judgment is affirmed.